IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10-CR-110 |
| | ) | No. 2:13-CV-219 |
| HOWARD COUCH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Defendant has filed a Motion under 28 U.S.C. § 2255 to vacate his sentence based on allegations of ineffective assistance of counsel [Doc.1110]. The United States has filed a Response [Doc. 1114]. The matter is now ripe for disposition. The Court finds the materials thus submitted, together with the record of the underlying criminal case (2:10–CR–110), conclusively show Defendant is not entitled to relief on any of the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, see *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.1993), and will DENY Defendant's motion for the following reasons.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On January 11, 2011, the Grand Jury returned a superseding indictment [Doc. 214] charging Defendant, along with 35 others, in Count One, with a conspiracy to distribute more than five (5) kilograms of mixture and substance containing a detectable amount of cocaine, a Schedule II, controlled substance, and in Count Two, with a conspiracy to distribute 100 kilograms or more of marijuana, both in violation of 21 U.S.C. § 841(a)(1). He faced a mandatory term of imprisonment of 10 years on the cocaine conspiracy account alone. He was

1

also charged with two counts of using a firearm in furtherance of two separate drug trafficking offenses in violation of 18 U.S.C. § 924(c).[1]

On October 3, 2011, Defendant entered a plea agreement [Doc. 583] in which he agreed to plead guilty to a lesser included offense in Count 2 for a conspiracy to distribute and to possess with the intent to distribute 50 kilograms or more of a mixture and substance containing a detectable amount of marijuana. He also agreed to plead guilty to only one § 924(c) count, (Count 122), which carried a minimum mandatory five (5) year term of imprisonment [Doc. 583, *Plea Agreement,* pg. 1]. The government agreed to dismiss the other § 924(c) violation as well as the other counts.

The plea agreement contains an extensive recitation of Title III intercepted telephone conversations between Defendant and his co-conspirators showing a substantial distribution network involving cocaine and marijuana, which involved hundreds of thousands of dollars. [Doc. 583, pg. 3-14]. Regarding the firearm's charge, Defendant stipulated to the following facts:

> On October 22, 2010, a federal search warrant was executed at the defendant's residence located at 3343 Highway 81N, Fall Branch, Tennessee. While approaching the residence law enforcement officers heard an alarm coming from the driveway. Upon entering the house, the first officer met the defendant face-to-face. The defendant had a .22 caliber rifle pointed at the officer, who in return, had his rifle pointed at the defendant. The defendant was told to put his weapon down and he complied. The officer secured the defendant's weapon and found it loaded with one round.

[Doc. 583, pg. 9]. Defendant also stipulated to the following:

> During the search of the defendant's garage, officers recovered seven and a half bales of marijuana, multiple baggies of marijuana, two empty bale wrappers with marijuana residue, and scales. Inside

---

[1] The § 924(c) violation charged in Count 122 related to the drug offense charged in Count 121 (distribution of marijuana on October 22, 2010), and the second § 924(c) violation charged in Count 126 related to the conspiracy to distribute cocaine charged in Count 1.

>   the defendant's residence, officers found multiple baggies of pre-packaged marijuana in the bathroom, kitchen, and bedroom. Officers recovered a Winchester, model 190, loaded with fifteen rounds, a Remington, model Nylon 66, loaded with one round, and a CBC Industria Brasileria, model 51, 12 gauge shotgun, loaded with one shell in the bedroom, along with a cell phone and two drug ledgers. In the kitchen, officers recovered a Star, model Starlet, .22 caliber, loaded with seven rounds, and a set of small scales. In a detached freezer room, officers recovered large, industrial sized plastic wrap, large industrial sized stainless steel scales, and a ledger. Overall, agents found approximately 188 pounds of marijuana at the defendant's residence, in addition to approximately five grams of cocaine and approximately one gram of cocaine base ("crack").

[Doc. 583, pg. 9].

The Presentence Report calculated Defendant's total offense level for Count Two (2) to be level 21, classified him in Criminal History Category I, with a corresponding advisory guideline imprisonment range of 37 – 46 months. PSR at ¶ 46, 68. For the § 924(c) charge, the PSR noted that the statute required a five year minimum mandatory term of imprisonment to be served consecutive to whatever the Court imposed on the underlying drug offense. PSR at ¶ 47, 69. The PSR also noted Defendant's physical conditions, including that he suffered from a hernia. PSR at ¶ 62.

Defendant's counsel filed a sentencing memorandum in which he asked the Court to depart downward from Defendant's guideline range based on Defendant's age, physical condition and family ties and responsibilities [Doc. 893, pg. 1-3]. At sentencing, the District Court stated that it had "considered the possibility of whether or not the Court should grant the variance. The Court has determined it would not be appropriate to grant a variance in this case." [Doc. 1030, *Transcript of Sentencing Hearing,* pg. 4].

On April 17, 2012, the District Court sentenced Defendant to 37 months on the marijuana conspiracy count and 60 months on the § 924(c) violation for a total effective sentence of 97

3

months of imprisonment. [Doc. 906, *Judgment*]. On May 4, 2012, Defendant filed a "Pro-Se Notice of Appeal" for "ineffective assistance of counsel." [Doc. 937]. On November 19, 2012, the Sixth Circuit granted Defendant's motion to voluntarily dismiss this appeal [Doc. 1063]. On August 19, 2013, Defendant filed this Motion to Vacate under 28 U.S.C. § 2255 [Doc. 1110].

## II.  STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside the sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack ....

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. See *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F.Supp.2d 882, 886 (E.D.Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998) (citing *United States v. Frady*, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th

4

Case 2:10-cr-00110-RLJ-MCLC   Document 1239   Filed 07/27/16   Page 4 of 12   PageID #: 5959

Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); s*ee also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

### III.  ANALYSIS

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must

5

> show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690.

The second prong of the *Strickland* test requires the defendant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

**A.  Ground One – The allegation that defense counsel failed to investigate that rendered Defendant's guilty plea unknowing and involuntary**

Defendant alleges in his motion to vacate that he received ineffective assistance of counsel which "rendered [the] Guilty Plea Unknowing and Involuntary" [Doc. 1110, pg. 4]. He alleges that his counsel "refused to investigate and prepare any defense, and the advice to plead guilty was premised on a faulty interpretation of the law." *Id.* But Defendant fails to identify what defense his counsel should have investigated or how he wrongly interpreted the law.

Defendant filed a 40-page memorandum in support of his motion and discussed the plea

6

agreement and the advice his counsel provided. Defendant complains that his counsel said "that he would be given an opportunity to secure a sentence reduction under U.S.S.G. § 5K1.1." [Doc. 1111, pg. 16]. On attempting to cooperate, he did, in fact, debrief with the FBI, but was unable to provide substantial assistance. [2] Thus, he did not qualify for a U.S.S.G. § 5K1.1 motion.

Moreover, he does not allege that he pled guilty because of any faulty advice given to him. To the contrary, he insisted "for nearly twelve solid months that he [was] innocent of the charges lodged against him." *Id.* at 27. He claims that Sarabia, the drug kingpin of this conspiracy, had "one goal in mind: to entice [Defendant] into drug addiction and drain him of his assets." *Id.* He claimed that although he had every intention of proceeding to trial, "in the end, it was the faulty and illegal indictment itself and the threat of life imprisonment that came with it, that forced [him] to enter a plea of guilty." [3] *Id.* at 29.

He states that he told his lawyer that he had no knowledge of any marijuana on his rental property, [Doc. 1111, pg. 30], that he had "just evicted unlawful and uninvited residents from the property prior to the execution of the search warrant and that weapons were present on the property to prohibit their return." *Id.* at 30. He claims that his counsel refused to discuss any defense with him, refused to meet with him, refused to investigate "potentially exonerating evidence, refused to interview witnesses…." *Id.* at 31. Despite these claims, he fails to identify one witness or reference any exonerating evidence that he claims supports his allegations of ineffective assistance of counsel.

---

[2] Defendant seems to raise a couple of issues in his pleadings but then acknowledges that the issues are without merit. On whether he qualified for the safety valve, he acknowledges that he "did not qualify for the Safety Valve because of the weapons count." [Doc. 1111, at pg. 21]. On the issue of his counsel setting up a debriefing with the United States in an effort to cooperate, a debriefing, in fact, was arranged with the FBI, who met with Defendant in Blount County. *Id.* at 21. Defendant could not provide them information on the individuals against whom they sought information and left the meeting. *Id.* at 22.

[3] Defendant does not identify any particular issue with the indictment that would render it invalid or illegal. Defendant cannot rest on mere allegations of his pleadings. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir.1961).

7

In the face of those assertions stands Defendant's guilty plea. When he appeared before the District Court, while under oath, he acknowledged that he had told his counsel everything that he knew about the case, and he personally believed that his attorney was fully aware of all of the facts on which the charges were based. [Doc. 1053, *Transcript of Plea Colloquy*, pg. 5]. Defendant goes to great length in his § 2255 motion to detail his side of the story and yet all of that was known to his counsel at the time of the plea. While his assertions might very well mitigate any potential sentence he might receive, they do not rise to the level of a defense to the charges.

Indeed, the facts against Defendant were overwhelming. At the plea hearing, the government summarized, in open court, the facts that supported the plea, detailing for the District Court that Defendant had purchased quantities of marijuana and cocaine from Sarabia for resale within the Eastern District of Tennessee. *Id.* at 11. It covered the Title III intercepts of phone calls Defendant had with Sarabia. The government also noted that agents discovered 188 pounds of marijuana, five grams of cocaine, and one gram of crack at Defendant's residence. In fact, the marijuana was prepackaged and found in the bathroom, kitchen and bedroom of the residence, not just in the garage. *Id.* Agents also found firearms in the bedroom with a cell phone and two drug ledgers. *Id.*

The District Court specifically asked Defendant if he agreed with the government's summary of the facts which supported his plea to these charges. That summary, of course, included the fact that he sold marijuana for Sarabia and possessed loaded firearms next to his prepackaged marijuana. He agreed with the government's summary of the facts against him [Doc. 1053, *Transcript of Plea Colloquy*, pg. 12]. He then pled guilty to the marijuana conspiracy and one § 924(c) charge and acknowledged that he was pleading guilty because he was, in fact, guilty. *Id.* at 12.

Defendant fails to identify how any investigation would have countered these facts or what his defense was to these charges. Although Defendant claims he knew nothing of the marijuana found in the garage, that was not the only location where the marijuana was found in the residence [Doc. 1111, pg. 30]. It was all over the house, prepackaged and ready to be distributed. In fact, in the bedroom, agents found loaded firearms right along with marijuana and drug ledgers. His claim that his counsel failed to conduct an adequate investigation is belied by the overwhelming evidence against him.

Defendant also alleges that his counsel gave him "faulty advice" that he contends contributed to his decision to plead guilty. The specific advice he claims was "faulty" was that his counsel advised him that "he would be facing life imprisonment if he were to be found guilty on multiple [§ 924(c) violations]." *Id.* at 32. He cites *United States v. Sims*, 975 F.2d 1225 (6th Cir. 1992) for support of his argument that his counsel was ineffective for advising him that he could be convicted of multiple counts under § 924(c).

His reliance on *Sims* is misplaced. In *Sims,* the Sixth Circuit held that "where the indictment contains only one substantive drug trafficking offense and separate counts under section 924(c) for weapons which fall into more than one weapons category as defined by that section, the court must consolidate those section 924(c) counts, either pre- or post-trial so that no defendant will be convicted on more than one gun count relative to the one drug trafficking offense." *United States v. Sims*, 975 F.2d 1225, 1235 (6th Cir. 1992).

But Defendant did not face only one substantive drug trafficking offense, he faced three. He was indicted for a cocaine conspiracy, (Count 1), a marijuana conspiracy, (Count 2), and possessing with the intent to distribute marijuana on October 22, 2010 (Count 121). Moreover, the § 924(c) violations related to separate and distinct drug trafficking offenses. If Defendant had proceeded to trial and been convicted, he would have faced sentencing on two separate §

9

924(c) violations, or a mandatory minimum term of imprisonment of 30 years.[4] This 30 year sentence would have to be served consecutively to the sentence on the underlying drug conviction, and he faced a minimum mandatory 10 years on that. See 18 U.S.C. § 924(c)(1)(A). Thus, he was facing 40 years imprisonment at a minimum. At 55 years old at the time of sentencing, that seems like a life sentence. Indeed, in light of what he was facing, his decision to plead guilty seems, quite frankly, a reasonable one. His counsel negotiated a very favorable resolution in light of Defendant's enormous exposure if he had proceeded to trial and lost.

In reality, the real reason Defendant pled guilty to these offenses related not to any deficiency in any advice he received or lack of investigation on the part of his counsel. On the contrary, the real reason was he did not want to risk spending the balance of his life in prison if he lost at trial. In Defendant's own words, "it was … the threat of life imprisonment … that forced me to enter a plea of guilty." [Doc. 1111, pg. 29].

In any event, at Defendant's plea, the government specifically advised Defendant that he was facing a term of imprisonment of not more than 20 years on the marijuana conspiracy, Count Two, and a mandatory minimum term of imprisonment of five years and not more than life on the § 924(c) offense. [Doc. 1053, *Transcript of Plea Colloquy*, at pg. 13]. Defendant knew exactly what his sentencing exposure was by virtue of his plea. His claim is without merit.

B.  **Ground Two – The allegation that defense counsel failed to effectively represent Defendant at sentencing**

In his second claim for relief, Defendant complains his counsel failed to seek a

---

[4] The 25-year mandatory minimum sentence accompanies each "second or subsequent" conviction applies even when the first conviction was obtained in the same proceeding. *Deal v. United States,* 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993); *United States v. Jacobs,* 244 F.3d 503, 508 (6th Cir.2001) ("The United States Supreme Court has held that even though a defendant is convicted of multiple firearm violations in the same proceeding, 18 U.S.C. § 924 imposes a five-year consecutive prison sentence for the first violation of § 924(c)(1) and an additional twenty-year consecutive prison sentence for each additional violation of § 924(c)(1)"); see also *United States v. McNeal*, 364 F. App'x 214, 216 (6th Cir. 2010).

downward departure based on pre-sentence confinement "conditions." [Doc. 1111, pg. 37]. Specifically, he complains he received inadequate medical treatment while incarcerated pretrial, noting a severe tooth ache and a "small hernia."[5] [Doc. 1111, pg. 17-18]. He also noted that he had to live with constant threats of bodily harm by "the Pod bullies." *Id.* at 18. He also claims his counsel failed to raise a number of different bases that would have supported the District Court varying from the sentencing guideline range. He insists that his counsel did not ask the District Court to consider his age, physical condition, or his family ties are bases for a downward departure. [Doc. 1111, at pg. 36-37].

Contrary to Defendant's claim, his counsel did request the District Court to depart based on Defendant's age, his physical condition, the fact that he suffered from a hernia and was not able to receive treatment, and referenced the summary of Defendant's physical condition detailed in the PSR. He also requested a departure based on Defendant's family ties and responsibilities. His counsel noted that Defendant was his mother's sole caregiver and that she needed him at home to care for her. [Doc. 893, *Sentencing Memorandum,* pg. 2]. The District Court appropriately considered those factors and found they did not warrant a departure from the Guidelines. [Doc. 1030, *Transcript of Sentencing Hearing,* pg. 4]. The argument that his counsel failed to raise these issues is simply without merit.

Finally, he notes that in reviewing the PSR, Defendant claims that he found "two erroneous listings in the criminal history section – one that resulted in the addition of a point in his calculation." *Id.* at 20. He says he advised his counsel about those errors. *Id.* Defendant does not identify what specific error he found in the criminal history calculation and fails to allege that it would have made any difference in his sentence. The Court notes that the PSR

---

[5] Both of these conditions were seen by medical professionals when he was moved to Ocilla, Georgia. [Doc. 1111, pg. 20].

11

calculated his Criminal History as Category I, the lowest that there is. In any event, any error in failing to raise this would have had no impact on his Criminal History category. His claim is without merit.

## IV. CONCLUSION

None of the grounds asserted by Defendant supports a finding his counsel's assistance was ineffective. For the reasons stated above, Defendant's plea was voluntary and his sentencing was not in violation of the Constitution or laws of the United States or otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED.

In addition to the above, this Court CERTIFIES any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Defendant for leave to proceed *in forma pauperis* on appeal is DENIED. Rule 24 of the Federal Rules of Appellate Procedure. Defendant has failed to make a substantial showing of the denial of a constitutional right, see 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure, or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability SHALL NOT ISSUE. *Slack v. McDaniel*, 529 U.S. 473, 484–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

An Order shall enter.

    s/ Leon Jordan
    United States District Judge